K.K. HALL, Circuit Judge,
dissenting:
I respectfully dissent.
After its inventory of eases that follow the holding of Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the majority concludes, “[t]he only difference between these ... cases and this case is that this case arises in the context of a collective bargaining agreement.” Supra at 885. I agree. The majority fails to recognize, however, that the only difference makes all the difference. A labor union may not prospectively waive a member’s individual right to choose a judicial forum for a statutory claim.
I.
In Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), a unanimous Supreme Court held that a person may sue under Title VII notwithstanding that he has submitted his claims to arbitration under a collective bargaining agreement and lost. In reaching this conclusion, the Court stated that an employee’s individual statutory right is completely independent of any contractual right he may have under a collective bargaining agreement, and the individual rights of employees are not subject to waiver by their union:
In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.
... [W]e think it clear that there can be no prospective waiver of an employee’s rights under Title VII. It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike, [cites omitted] These rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual’s right to equal employment opportunities. Title VII’s strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the *887 collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VIL In these circumstances, an employee’s rights under Title VII are not susceptible of prospective waiver.
We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII. The federal court should consider the employee’s claim de novo.
415 U.S. at 49-52, 59-60, 94 S.Ct. at 1020-21, 1025. Thus, under Gardner-Denver, a clause in which a union purported to waive employees’ rights to pursue Title VII claims in court would be clearly unenforceable. Gardner-Denver was closely adhered to in Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and McDonald v. City of West Branch 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984).
II.
Gilmer did not overrule this line of authority. The Supreme Court has said so, twice.
First of all, in Gilmer itself, the Court enforced an agreement to arbitrate contained in an individual (not collective) contract between a stockbroker and his employer. Writing for a seven-member majority, Justice White was careful to distinguish Gardner-Denver. Though he eschewed language in Gardner-Denver that expressed judicial mistrust of arbitration, he left its holding intact. He explained that the collective bargaining agreements in Gardner-Denver and its progeny did not contain the agreement of the employees to arbitrate statutory claims. Second, and of central importance here, because labor arbitrations involve contracts negotiated by unions, “[a]n important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case.” Finally, Gilmer, unlike the labor cases, arose under the Federal Arbitration Act. 500 U.S. at 35, 111 S.Ct. at 1656-57.
In a more recent unanimous decision, the Court reiterated the vitality of Gardner-Denver, albeit in dicta:
In holding that an agreement to arbitrate an Age Discrimination in Employment Act claim is enforceable under the Federal Arbitration Act, Gilmer emphasized its basic consistency with our unanimous decision in [Gardner-Denver ].
Livadas v. Bradshaw, — U.S. -,-n. 21, 114 S.Ct. 2068, 2080 n. 21, 129 L.Ed.2d 93 (1994).
Several federal courts have recognized that Gardner-Denver, rather than Gilmer, continues to govern in the context of collective bargaining agreements. Tran v. Tran, 54 F.3d 115, 117, 118 (2nd Cir.1995); Humphrey v. Council of Jewish Federations, 901 F.Supp. 703, 709-710 (S.D.N.Y.1995); Jackson v. Quanex Corp., 889 F.Supp. 1007, 1010-1011 (E.D.Mich.1995); Randolph v. Cooper Industries, 879 F.Supp. 518, 520-522 (W.D.Pa.1994); Block v. Art Iron, Inc., 866 F.Supp. 380, 384-387 (N.D.Ind.1994); Griffith v. Keystone Steel & Wire Co., 858 F.Supp. 802, 804 (C.D.Ill.1994); Claps v. Molitemo Stone Sales, Inc., 819 F.Supp. 141, 145-147 (D.Conn.1993). The case first above listed is a decision of the Court of Appeals for the Second Circuit; consequently, the majority’s holding will create a split among the circuits.
Gardner-Denver is the law. Austin may pursue her contractual remedy, her statutory remedy, or both. The judgment of the district court should be reversed.